Silas MILLER

v.

GENERAL ELECTRIC COMPANY.

Civ. A. No. 79–3100.

United States District Court,
E.D. Pennsylvania.

March 2, 1983.

Malcolm W. Berkowitz, Philadelphia, Pa., for plaintiff.

Morris R. Brooke, Drinker, Biddle & Reath, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

VanARTSDALEN, District Judge.

### I. INTRODUCTION

This is an age discrimination action in which the plaintiff, Silas A. Miller, alleges, *inter alia,* that the defendant, General Electric Company (GE), demoted him and reduced his salary by twenty-five percent (25%) because of his age in violation of the

Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634. Trial was held before this court, sitting without a jury, on January 27 and 28, 1983. Upon consideration of the evidence and exhibits presented at trial and the post-trial memoranda submitted by the parties, I conclude that age was not a determinative factor in plaintiff's demotion and/or reduction in pay. I further conclude that plaintiff has failed to prove by a preponderance of evidence any violation of the ADEA by the defendant. In accordance with Federal Rule of Civil Procedure 52(a), I make the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

1. Plaintiff, Silas A. Miller, was born on April 22, 1928. At all times relevant to this action, plaintiff was within the age group which Congress intended to protect under the provisions of the ADEA. *See* 29 U.S.C. § 631. Defendant, GE, is an "employer" as that term is defined under the ADEA. *Id.* § 630(b).

2. Plaintiff was hired by GE in 1959. After working in various positions at different GE facilities, plaintiff applied for the position of manager of materials at GE's Philadelphia Apparatus Service Shop. The Philadelphia Apparatus Service Shop was a repair facility for large equipment, including engines, transformers and turbines. The manager of materials was responsible for, *inter alia,* the order and purchase of parts and materials, the maintenance of the necessary inventory and the supervision and control of the stock room. The manager of materials reported directly to the shop manager.

3. Plaintiff was interviewed for the position of manager of materials by John Forchielli, the shop manager of the Philadelphia Apparatus Service Shop, and by Jack Waldron and Harold Bongarten, general managers at GE's Apparatus Service Business Division in Schenectady, New York. Mr. Bongarten commented to Mr. Forchielli that plaintiff "did not look like a shop manager." Mr. Miller was hired for the job of manager of materials and held that position from October, 1973 to February, 1978. The position was rated at a level 12 with a concomitant salary in 1978 of approximately $28,000. Mr. Miller was forty-five years of age when he was hired for the position.

4. In Mr. Miller's evaluation and development summary report dated January 14, 1974, Mr. Miller designated his immediate career interest as "Service Shop Manager" and his long term career interest as "Service Shop Manager—reporting to a Department Level Manager" or "Area Manager in Europe or South America." The evaluation of Mr. Miller's performance as manager of materials since joining the Philadelphia Apparatus Service Shop in October of 1973 was favorable. The report, dated January 14, 1974, stated that Mr. Miller needed more exposure to the business but concluded, "Si has the ability to be a successful Shop Manager." A promotion to a shop manager was Mr. Miller's next recommended assignment after two years in the position of materials manager. *See* Plaintiff's Exhibit 8.

5. In Mr. Miller's evaluation and development summary dated January 16, 1976, Mr. Miller again received a favorable performance rating as manager of materials. The report recommended more "firing line" experience and continued exposure to the service business. The report further stated: "Si wants to be a Shop Manager and I feel that he has the drive, background and ability to be a successful one. He can also be a significant contributor as the Division Manager of Materials." The report, prepared by shop manager John Forchielli, recommended the position of shop manager as Mr. Miller's next assignment after one more year as materials manager and after completion of a shop manager training program. *See* Plaintiff's Exhibit 9.

6. Mr. Miller's performance was again reviewed in a report, dated December 16, 1976, prepared by Shop Manager R.O. Anderson. The report described Mr. Miller's work as follows:

> Performed an outstanding service in controlling · Shop's vendor purchases. Has established a creditable stockroom, ship-

ping and receiving function. Was a significant contributor to Division pooled purchasing efforts and the Shop's PAR program in 1976. Satisfactory performance in present assignment. Performance trend good but close to reaching a plateau due to decreasing challenges.

Again, Mr. Miller was recommended for the position of shop manager, after another year as manager of materials and after completion of a shop manager training program. See Plaintiff's Exhibit 3.

7. In August of 1977, Francis D. Westfall, Jr., assumed the position of shop manager at the Philadelphia Apparatus Service Shop succeeding R.O. Anderson. Prior to that, Mr. Westfall was manager of the Manufacturing Projects, Eastern Apparatus Service Department. Mr. Westfall was familiar with the financial status of the Philadelphia Apparatus Service Shop. Mr. Westfall was sent to the Philadelphia Apparatus Service Shop by W.H. Bryan, the general manager of the Eastern Apparatus Service Department. The purpose in sending Mr. Westfall to the Philadelphia shop was "to get things back on track" after the Philadelphia shop, which historically had been one of GE's most productive shops, had received poor intra-corporate financial ratings.

8. Mr. Westfall reviewed the performance reports of each of the Philadelphia service shop managers, including Mr. Miller. Mr. Westfall discovered what he perceived to be deficiencies in the materials section, of which Mr. Miller was the manager. Mr. Westfall discussed these areas of concern with Mr. Miller in November of 1977. At or about that time, an audit was conducted of the Philadelphia Apparatus Service Shop by members of GE's Apparatus Service Business Division in Schenectady, New York. Although Mr. Westfall did not receive the written report of the material systems analysis for the Philadelphia Apparatus Service Shop until on or about January 19, 1978, Mr. Westfall received oral communications concerning deficiencies from the auditors prior to that date. The results of the audit identified problems in the materials section which needed to be addressed as well as problems which had been previously noted in that section which were in Mr. Westfall's opinion still uncorrected. These problems included missing or damaged materials and inadequate inventory control.

9. In an evaluation and development summary prepared by Mr. Westfall, dated January 4, 1978, in regard to Mr. Miller's performance, Mr. Westfall stated that the plaintiff's performance had been "totally unsatisfactory" during the period in which Mr. Miller had reported to Mr. Westfall. The report identified specific areas of concern within the materials section—continued material shortages, inaccurate accounting for assigned stock and lack of any organized approach to the materials functions—as well as Mr. Miller's waning enthusiasm and drive. Mr. Westfall recommended a ninety (90) day probationary period for Mr. Miller to "determine whether removal from the job is appropriate." Notwithstanding the prior evaluations and recommendations as to Mr. Miller's potential for a position as a shop manager, Mr. Westfall's evaluation summary stated that the plaintiff's goals were unrealistic at that time and that it was mandatory for Mr. Miller to make a concerted effort to improve his present performance. See Defendant's Exhibit 1.

10. Mr. Westfall received the material systems analysis audit of the Philadelphia Apparatus Service Shop on or about January 19, 1978. A copy of the audit was sent to Mr. Miller. See Defendant's Exhibit 3. Mr. Miller forwarded a copy of the January, 1978 report to two of his subordinates, John Baldino and Wayne Bevan, and suggested to them that the report would probably result in some personnel changes.

11. On or about January 19, 1978, Mr. Westfall prepared a follow-up report on Mr. Miller's performance. Again, Mr. Westfall identified specific deficiencies in Mr. Miller's performance and emphasized that if there was not significant improvement during the ninety (90) day probationary period, Mr. Westfall would take action to remove

Mr. Miller from his position as materials manager. Mr. Westfall also indicated that he had not yet received the comprehensive plan for the elimination of material shortages in accordance with his November, 1977 discussion with Mr. Miller. Defendant's Exhibit 2.

12. In a memorandum to Mr. Westfall dated February 3, 1978, Mr. Miller responded to Mr. Westfall's criticisms. Mr. Miller specifically addressed each of Mr. Westfall's concerns and further attempted to reconcile the deficiencies identified by Mr. Westfall. For example, Mr. Miller pointed out that his request for additional help for the materials section, including a full-time expediter and a manufacturing management program trainee, had been denied. Additionally, Mr. Miller defended his failure to provide a formal plan for the elimination of material shortages by asserting that it was his understanding that such plan was not to be attempted until after receipt and review of the division materials audit and review. On or about February 6, 1978, Mr. Miller submitted to Mr. Westfall his formal plan for remedying the problems identified in the materials section. *Compare* Defendant's Exhibit 4 *with* Defendant's Exhibit 5.

13. During Mr. Miller's probationary term, plaintiff took vacation time in order to travel to Florida to visit his ailing mother. Mr. Westfall was never notified of the plaintiff's vacation plans or the reason therefor. This action by Mr. Miller resulted in Mr. Westfall's decision to remove Mr. Miller from the position of manager of materials. *See* Plaintiff's Exhibit 1. Upon his return, the plaintiff's probationary status was terminated. In a letter dated February 24, 1978, Mr. Westfall notified Mr. Miller that he had thirty (30) days to seek employment, either inside or outside of GE. The letter further stated that if Mr. Miller was unable to obtain employment within the thirty (30) day period, GE would be prepared to offer him a level 6 position as a foreman. Before making the decision to terminate Mr. Miller, Mr. Westfall consulted with W.H. Bryan, the general manager of the Eastern Apparatus Service Department.

14. Plaintiff was replaced in his position as materials manager by Ronald F. Ritschel. Mr. Ritschel was under the age of forty at the time he replaced Mr. Miller.

15. Plaintiff was unable to find alternative employment during the thirty-day period. On or about March 24, 1978, he accepted GE's offer of a position as foreman at a level 6. He retains that position to date. Mr. Miller's salary was reduced by twenty-five percent (25%) as a result of the demotion from a level 12 position to a level 6 position. Mr. Miller's functions as a foreman are substantially different from his functions as a materials manager. In the latter position, Mr. Miller had ten to twelve hourly employees working under his supervision and three exempt salaried employees under his control. As a foreman, Mr. Miller supervises three to four hourly employees (truckers) and no exempt employees. Although some of his duties are tasks which he performed when he held the position of manager of materials, Mr. Miller no longer has the supervisory or managerial responsibilities of a materials manager.

16. While in his current position as foreman, Mr. Miller was alerted to an opportunity to work as a materialman administrator on a "contract basis" at a nuclear power plant in Tulsa, Oklahoma. When a GE employee goes to work for another company on a contract basis, the employee remains on the GE payroll, receiving his regular GE salary and benefits, and GE receives compensation for the employee's services under the contract with the borrowing company. Mr. Westfall objected to sending plaintiff to the Tulsa power plant on a contract basis because the position would only have been temporary. As a result, Mr. Miller was prevented from accepting a position which would have enabled him, at least temporarily, to maintain his former level 12 position.

17. Plaintiff also sought to apply for a manager of materials position at another GE plant. Mr. Miller forwarded his resume and arranged an interview in Schenectady, New York. On the day before Mr. Miller was scheduled to leave for the interview, he

notified Mr. Ritschel and, at noon, picked up a cash advance for his expenses. Later that day, Mr. Miller received a call from Mr. Westfall to cancel the proposed trip. Mr. Westfall's reason for cancelling the trip was Mr. Miller's failure to notify him in advance and to obtain permission to be away from the Philadelphia office. Although the interview was rescheduled for two weeks later, the job opening was filled by another applicant in that interim.

18. At some time prior to the arrival of Mr. Westfall, Mr. Miller had his driver's license suspended after being involved in an automobile accident. Mr. Miller was cited for driving while intoxicated. Thereafter, Mr. Miller was driven to work each day by Max Gollmer, the manager of mechanical services. Mr. Westfall knew that Mr. Miller was having family problems and had heard rumors that he had a problem with alcoholism. However, Mr. Westfall did not confront Mr. Miller as to these problems. Although GE had a counseling program for employees who had a problem with alcoholism, Mr. Westfall made no effort to encourage Mr. Miller to participate in the program. Mr. Miller had not come forward or sought the assistance of GE for any drinking problem he may have had and Mr. Westfall was under no corporate duty or regulation to broach this subject with him.

19. GE had a detailed policy and procedures for dealing with a "lack of work" situation. The policy defined a lack of work situation as one where (1) business decisions indicated no further need for an approved exempt position; or (2) where the requirements for the position had been so altered in content that the person in that position could not expect to meet them. Plaintiff's Exhibit 2. The procedures included, *inter alia*, the employee's right to receive one week in time for each year of employment in order for the employee to find coequal employment either within GE or outside of GE. William Green, a former GE employee working as a sales engineer in the Philadelphia Service Shop, was placed on lack of work status in April, 1978 because. GE did not have adequate work for him to perform. Mr. Green was given one week for each year of service, or a total of twenty weeks, to find another job. During this time, he was paid his regular salary and had access to GE facilities in seeking other employment. After three months, Mr. Green found another job.

20. Mr. Miller did not qualify for and Mr. Miller was not entitled to "lack of work" status as that term is defined under the GE policy. Mr. Miller was not, therefore, entitled to the same perquisites afforded to Mr. Green. Mr. Miller's termination or demotion in lieu of termination was the direct result of a disciplinary decision and not the result of a lack of work situation. Mr. Ritschel assumed the functions and responsibilities of Mr. Miller, as materials manager, and that change was not triggered by a lack of work.

21. At the time that Mr. Westfall assumed the position of shop manager at the Philadelphia Apparatus Service Shop, in August, 1977, he had eight subordinate managers reporting to him. Their names, positions and ages at the time Mr. Westfall became shop manager are as follows: Silas Miller, manager of materials, age 49; Patrick Harrigan, sales manager, age 34; Ronald Ritschel, finance manager, age 33; Dwight Olsen, manager of electrical services, age 44; Alfred Plefka, manager of transportation services, age 39; Max Gollmer, manager of mechanical services, age 42; Kenneth Rys, manager of manufacturing engineering, age under 40, and David Kirk, manager of power generation, age 54. Of the eight managers working in the Philadelphia Apparatus Service Shop when Mr. Westfall took over, only Mr. Miller was removed from his position.

22. After Mr. Westfall assumed the position of shop manager, several managers left the Philadelphia Apparatus Service Shop for promotions or for other reasons. Mr. Harrigan was replaced by Henry Owens, age 53. Mr. Olsen was replaced by Joseph Podgurski, age 49. Mr. Gollmer was replaced by James DeLaura, age 35. Mr. Rys was replaced by Peter Franco, age 51. When Mr. Ritschel took over the plaintiff's

616

position, he was replaced by Robert Naglieri, age 29.

23. Joseph Carapellucci worked at GE's Philadelphia Apparatus Service Shop as a manufacturing engineer. Mr. Carapellucci had been a GE employee for approximately thirty-eight years. In Mr. Carapellucci's evaluation and development summary dated February 8, 1977, Mr. Carapellucci's performance for the first half of the previous year was rated "just satisfactory." For the second half of the year, his performance was rated as having "slipped to less than required." In a follow-up performance review dated July 8, 1977, Mr. Rys, the manager of the manufacturing engineers, stated that Mr. Carapellucci's performance had "deteriorated to an unacceptable level of productivity." Mr. Carapellucci was placed on probation for forty-five days, with the caveat that if his performance and attitude did not improve by October 14, 1977, he would be transferred or terminated. In a memorandum dated October 14, 1977, Mr. Westfall notified Mr. Carapellucci that he was being removed from his level 9 position as a manufacturing engineer and being demoted to a level 7 position as a mechanical operations specialist. This move resulted from Mr. Carapellucci's failure to maintain an acceptable level of productivity during his probationary period. See Defendant's Exhibits 9–11. Although Max Gollmer and Fred Plefka both spoke to Mr. Westfall seeking to forestall Mr. Carapellucci's demotion, Mr. Westfall refused to change his decision. Ultimately, Mr. Carapellucci opted for an early retirement from GE and went on to work at another company. Mr. Carapellucci's pension benefits are based in part upon his length of service and his salary for his highest previous five years.

24. Pension benefits under GE's retirement benefit plan are calculated under two formulas: the regular pension formula and the guaranteed minimum formula. The guaranteed minimum formula applies if an employee has at least ten years of "pension qualification service" at retirement and retires on or after age 60. Retirement benefits under the guaranteed minimum formula are based upon "high-5 pay" and "pension benefit service." High-5 pay means the average of an employee's annual pay during the five highest paid consecutive calendar years during the last ten calendar years before the employee retires. If the guaranteed minimum formula would give the employee more than the regular formula, the employee is entitled to the higher amount. To the extent that an employee would be eligible for pension benefits under the guaranteed minimum formula, any demotion accompanied by a reduction in pay would likely result in a decrease in pension benefits upon retirement.

## II. DISCUSSION

The Age Discrimination in Employment Act makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1). In his complaint, the plaintiff has alleged several violations of this provision. Mr. Miller's primary contention is that GE removed him from his position as materials manager and demoted him to the position of foreman at a twenty-five percent (25%) reduction in salary (Plaintiff's Complaint ¶ 9). To bolster his claim of age discrimination, Mr. Miller contends that GE refused to provide him "lack of work" status (Plaintiffs' Complaint ¶ 10) and interfered with his ability to obtain coequal employment either within GE or outside of GE (Plaintiff's Complaint ¶¶ 13–14). In addition, plaintiff contends that GE refused to compensate him for overtime he has worked in his position as foreman (Plaintiff's Complaint ¶ 11). At trial, plaintiff also raised the contention that GE discriminatorily refused to provide him with alcoholic or family counseling.

▪ In order to recover under the ADEA, a plaintiff must prove by a preponderance of evidence that age was "a determinative factor" in the employer's decision. See Smithers v. Bailar, 629 F.2d 892 (3d Cir.1980); Loeb v. Textron, Inc., 600 F.2d

1003 (1st Cir.1979); *Cleverly v. Western Electric Co.,* 594 F.2d 638 (8th Cir.1979); *Kentroti v. Frontier Airlines, Inc.,* 585 F.2d 967 (10th Cir.1978); *Laugesen v. Anaconda,* 510 F.2d 307 (6th Cir.1975). Plaintiff need not prove that age was the employer's sole or exclusive consideration but must prove that "age made a difference" in that decision. *Smithers, supra,* 629 F.2d at 898.

▮ There is no burden upon an employer of proving that a particular employment decision affecting the employee was a matter of sound business judgment. An employer may hire or fire/demote or promote any employee on the basis of purely subjective reasons, even if such reason is shortsighted or narrowminded, as long as age is not a determinative factor in that decision. *See Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 921–22 (2d Cir.1981); *Loeb, supra,* 600 F.2d at 1012. However, the fact that an employer can demonstrate that an employment decision was based upon. sound business reasons will not preclude liability under the ADEA if the employee can prove, nevertheless, that age was a determinative factor or that the reasons proffered by the employer are pretextual.

▮ A plaintiff can establish a prima facie case of old age discrimination using statistical information, direct evidence of discrimination and/or circumstantial evidence. One method of establishing a prima facie case of discriminatory discharge, which has been approved by the Third Circuit Court of Appeals, is to prove by a preponderance of evidence: (1) that the plaintiff was within the protected age group; (2) that the plaintiff was qualified for the position; (3) that the plaintiff was removed from the position; and (4) that the position was filled by a younger person. *Smithers, supra,* 629 F.2d at 894–95. These guidelines, borrowed from the Supreme Court's decision in *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824,

36 L.Ed.2d 668 (1973), a Title VII action, permit an inference of discriminatory conduct because the employer is presumed to have acted upon the impermissible factor of age, in the absence of another explanation. *Id.* at 895 (*citing Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)).

▮ Once the plaintiff succeeds in establishing a prima facie case under the *McDonnell Douglas* guidelines, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (*quoting McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824). The inference of discrimination dissolves when the employer shows a legitimate, nondiscriminatory reason for the conduct. The burden in this regard is not an onerous one. The burden that shifts to the defendant is "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094. It is enough for the employer to set forth, through the introduction of admissible evidence, the reasons for the employee's rejection. Once this "burden of production" has been satisfied, the plaintiff, who retains the "burden of persuasion" throughout the litigation, must convince the trier of fact that (1) a discriminatory reason more likely motivated the employer or (2) the employer's proffered explanation is unworthy of credence.[1] *See Blackwell v. Sun Electric Corp.,* 696 F.2d 1176 (6th Cir.1983).

**A. Plaintiff's Demotion and Reduction in Pay**

▮ As to plaintiff's claim that he was demoted from manager of materials to

---

1. The analytical framework established in *McDonnell Douglas* is not meant to be applied in a "rigid, mechanized or ritualistic" manner. *Furnco, supra,* 438 U.S. at 577, 98 S.Ct. at 2949. It merely serves as a guideline for the orderly presentation of evidence on the critical question of discrimination. There is no requirement

that the plaintiff await the development of the opposition's case-in-chief before coming forward with evidence as to the pretextual nature of the employer's decision. *See Worthy v. United States Steel Corp.,* 616 F.2d 698, 701 (3d Cir.1980); *Whack v. Peabody & Wind Engineering Co.,* 595 F.2d 190, 193 (3d Cir.1979).

foreman and reduced in his salary, there was no direct evidence that age was considered in that decision. Plaintiff attempted to present a prima facie case under the *McDonnell Douglas* criteria in order to justify an inference that age was a determining factor in that decision.

The undisputed evidence established that plaintiff was within the protected age group and that the plaintiff was removed from his position as manager of materials.[2] Plaintiff's current position requires duties and responsibilities which differ substantially from those performed by the materials manager. There is also no dispute that plaintiff was replaced in his former position by a younger person, Ronald Ritschel, who was thirty-four years of age when he took over as manager of materials. Finally, there was sufficient evidence to establish that plaintiff was qualified for the position of materials manager. Plaintiff worked in that capacity from October, 1973 to February, 1978 and had received favorable performance ratings up until 1977. Having satisfied the four prong test of *McDonnell Douglas* and *Smithers,* plaintiff established a prima facie case of age discrimination.

In the course of plaintiff's case-in-chief, the defendant developed, by way of cross-examination, a legitimate nondiscriminatory reason for Mr. Miller's removal from his position as materials manager. This reason was sufficient to rebut any inference of age discrimination. Deficiencies in the materials section were documented by both Mr. Westfall's testimony and the January 19, 1978 materials system analysis of the Philadelphia Apparatus Service Shop. Moreover, Mr. Miller's perceived indifference to the comments and criticisms of Mr. Westfall contributed to Mr. Westfall's ultimate decision to remove the plaintiff from his position. Under these circumstances, Mr. Westfall could justifiably have sought a replacement for Mr. Miller, despite Mr. Miller's favorable performance ratings in the past.

The fact that the final decision to remove Mr. Miller was based upon what is arguably a minor incident (the trip to Florida during plaintiff's probationary period) does not compel the conclusion that the defendant's motive was otherwise tainted. Even though Mr. Miller may have been entitled to vacation time, and even though his reason for taking the time off was sincere, the timing of his vacation during his probationary period and his failure to get express consent from Mr. Westfall are sufficient to justify Mr. Westfall's decision on a non-age related basis. The unauthorized vacation was not an isolated incident. It represented the culmination of a series of incidents which reflected, in Mr. Westfall's estimation, Mr. Miller's failure to appreciate the need to take affirmative action to correct the deficiencies in the materials section.

The defendant's explanation, if true, adequately rebuts any inference of discrimination arising from the fact that the plaintiff was removed and replaced by a younger person. The question presented is whether the plaintiff has otherwise proven that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence, and/or a mere pretext.

Plaintiff's "smoking gun" in this regard consists of two statements made by upper level GE employees. At or about the time Mr. Miller was interviewed for the materials manager position, Mr. Bongarten commented that plaintiff "did not look like a shop manager." The plaintiff seeks to have the court infer from this a veiled reference to his age. Contrary to the plaintiff's contentions, I do not infer from this that Mr. Bongarten believed the plaintiff to be too old for the job. This position is somewhat inconsistent with the fact that GE, nevertheless, offered Mr. Miller the job of mate-

---

**2.** At trial, GE contended that plaintiff was discharged and given the option of accepting a position as foreman at a lower level and a reduced salary. The plaintiff has contended that he was demoted. For purposes of analysis, it makes no difference whether GE's decision is characterized as a demotion or a discharge with an option to reapply for a lower level position. The question remains the same—whether age was a determinative factor in the employer's decision.

rials manager. Although Mr. Miller ultimately was not promoted to the position of shop manager, there is no evidence to suggest that Mr. Bongarten played any role in that decision. Additionally, even those shop managers who gave Mr. Miller a favorable recommendation and agreed that he had the potential to be a shop manager each recommended Mr. Miller gain further experience before promotion, either as the manager of materials, and/or by attending shop manager's training school. None recommended Mr. Miller's immediate promotion to shop manager.

Plaintiff also relies upon a statement by R.O. Anderson in Mr. Miller's evaluation and development summary. Mr. Anderson commented, "Performance trend good but close to reaching a plateau due to decreasing challenges." Plaintiff argues that the term "plateau" is a corporate code word signifying that plaintiff's age limited him from further advancement by way of advanced training or promotion. Not only is there no independent evidence to support this use and/or construction of this term, but I also conclude that plaintiff's interpretation of the term as used by Mr. Anderson is internally inconsistent with the recommendation in the report and is taken out of context. Mr. Anderson concluded that plaintiff was reaching a plateau "due to decreasing challenges" not due to his age. A fair reading of this sentence could equally be that Mr. Anderson concluded that plaintiff was ready to move to a new level with greater challenges. This interpretation is more likely in view of Mr. Anderson's conclusion that the plaintiff has "the drive, background and ability to be a successful [shop manager]." He further stated that the plaintiff's present level was a stumbling block to that position, thereby intimating that plaintiff's level should be increased.

The plaintiff further contends that age discrimination is established because of the impact his demotion and reduction in pay will have upon his pension benefits. In this regard, plaintiff argues that since his pension benefits will be computed based upon his average, highest five, previous, consecutive years salary, GE has "substantially reduced" the pension benefits ultimately payable to him and GE has "substantially reduced" the amount of pension benefits it would have to pay out of the GE pension fund. As I understand plaintiff's theory, it is that GE intentionally demoted Mr. Miller at the age of forty-nine, at least in part, to diminish its ultimate liability for plaintiff's pension benefits.

Notwithstanding the speculative nature of the plaintiff's argument,[3] there is absolutely no evidence whatsoever to suggest that the impact on pension benefits was a consideration in plaintiff's demotion. The mere fact that plaintiff's pension benefits may be affected by his reduction in pay does not, in and of itself, support an inference that age discrimination was a factor in GE's decision. It may suggest a possible motive or incentive to reduce the salary of all employees approaching retirement age but absent some evidence that the impact on pension benefits or on the contributions by GE were considered by GE and were motivating factors in plaintiff's demotion, I find this evidence to have little probative value. At best, it is only a circumstance to be considered by the fact finder in deciding whether age was a factor in the employment decision of the employer.

The plaintiff further attempted to bolster his claim that plaintiff's demotion and reduction in pay were based upon the impermissible factor of age through statistical

---

**3.** For example, plaintiff argues that his future rights to pension at early retirement or full retirement were reduced as a result of his demotion. However, the guaranteed minimum formula, which employs the "high-5 pay" means of computing retirement benefits, applies only to those who retire on or after age sixty. Additionally, retirement benefits are based on the *higher* of the guaranteed mini-

mum formula or the regular formula for computing retirement benefits. *See* Defendant's Exhibit 19 at 106–20; Defendant's Exhibit 20 at 62–63. Plaintiff has not established by a preponderance of evidence that his pension benefits would in fact be computed using the high-5 formula, or that his "demotion" would result in GE having to contribute less money to the pension fund.

evidence. At trial, plaintiff called an expert statistician, Professor Paul Shaman, of the University of Pennsylvania. Professor Shaman had been previously provided with factual data as to exempt and nonexempt salaried employees at five GE service shops in the Eastern Region for the purpose of statistical analysis. Professor Shaman was called at trial to offer his opinion as to why he could not form any conclusion regarding a pattern or practice of age discrimination at GE. Professor Shaman testified that there was information missing from the data supplied by GE and that there were internal inconsistencies in the data supplied by GE. Plaintiff argues that GE's "stonewalling" with reference to the statistical information which it was required, but failed, to provide, is further evidence of defendant's age discrimination, since it prevented plaintiff's statistician from formulating an opinion.

Plaintiff's complaints as to the adequacy of the data supplied by GE to Professor Shaman have been raised repeatedly before this court. On March 26, 1982, I held a hearing to finally resolve this continuing dispute. *See* Docket Entry # 53. At that time, I permitted both parties to present testimony as to the necessity of obtaining additional data for statistical analysis. At the conclusion of that hearing, I directed GE to supply plaintiff's expert with personnel information for salaried, exempt and nonexempt employees for the five major shops of GE's Eastern Apparatus Department. On June 18, 1982, a conference was held, again to resolve a dispute as to the sufficiency of this information. At the conclusion of that conference, GE agreed to provide the job history and salary data for exempt and nonexempt employees from January 1, 1976 until the individual left the Apparatus Service Shop payroll. *See* Docket Entry # 52. Plaintiff agreed that this would be sufficient for Dr. Shaman to complete his analysis. However, on October 21,

1982, plaintiff filed a motion to stay all proceedings and further discovery based upon the contention that GE had not complied with the terms of the June 18, 1982 conference. Upon consideration of GE's response, I denied plaintiff's motion upon a finding that GE had provided the statistical information required. *See* Docket Entry # 60.

Plaintiff's argument at trial, and in his post-trial memoranda, is essentially the same argument made in his October 21, 1982 motion. He contends that the statistical information provided by GE contains inconsistencies, contradictions, omissions and inadequacies. Again, GE's response is the same. To the extent that the statistical evidence contained omissions as to certain employees, such information is simply unavailable.[4] To the extent that the more recent data conflicts with the initial data supplied by GE to plaintiff's expert, GE asserts that such later information is the more accurate information based upon more exhaustive inquiry into GE personnel files, after requests by plaintiff, and orders of the court.

The plaintiff did not attempt to prove at trial that the most recent data supplied by GE was factually incorrect, but simply that it was admittedly inconsistent with earlier information. Nor did plaintiff attempt to prove that GE had available the additional data which the plaintiff contended had been omitted from the information already provided. Plaintiff simply refused to accept GE's data to the extent that it conflicted with the prior data sets. Moreover, plaintiff refused to accept GE's contention that certain information simply was unavailable.

■ After carefully reviewing the data sets supplied to the plaintiff by GE, and the supplements thereto (*See* Defendant's Exhibits 15–18), I conclude that GE has sufficiently complied with the court's discovery orders regarding the production of statisti-

---

**4.** For example, Dr. Shaman complained that there were omissions as to the reasons why certain employees had left GE. Where the reason why an employee left a particular shop was known to GE, such as a retirement or transfer, the information was provided. However, I agree with GE that the reason an employee leaves a particular job may be purely subjective and such information may not be within the employee's personnel history.

cal information and that the available information was disclosed to plaintiff. I find no inference of age discrimination from the information supplied or the lack thereof. Whether the information was statistically significant was a matter for expert opinion. Plaintiff's expert could reach no conclusion from the data.

As to the statistical data regarding the Philadelphia Apparatus Service Shop, admittedly a limited data set, there is clearly no statistical evidence of discrimination based on age. In August, 1977, when Mr. Westfall became shop manager, there were eight subordinate managers under his supervision. Of these eight, including Mr. Miller, four were over the age of forty and four were under the age of forty. Four individuals left the Philadelphia shop after August, 1977 to be promoted to positions at other GE locations. Two were over forty and two were under forty. Mr. Miller was the only individual at the Philadelphia Apparatus Service Shop to be demoted. Of the five replacements after August, 1977, three were over age forty and two were under age forty. The age distribution in the Philadelphia shop after August, 1977, therefore, consisted of five managers over age forty and three managers under age forty. This data would not support an inference of age discrimination as to the Philadelphia shop.

In this case, since the evidence is overwhelming and uncontradicted that the decision to terminate and/or demote Mr. Miller was made by Mr. Westfall, the new shop manager of the Philadelphia Apparatus Shop, statistical evidence gleaned from other GE facilities, would, in any event, be of limited assistance. Although Mr. Westfall's decisions required approval from GE supervisory personnel higher in the executive hierarchy of GE than Mr. Westfall, all of the evidence establishes that the decision was solely that of Mr. Westfall.

B. Plaintiff's Related Claims of Age Discrimination

█ Plaintiff has alleged that GE discriminatorily denied him "lack of work status" upon his removal from the position of materials manager. At trial, Mr. Miller introduced the testimony of William Green, a GE employee who was placed on lack of work status in 1978, at the age of forty-seven, because GE did not have adequate work for him to perform. It is clear from GE's lack of work policy and procedures (See Plaintiff's Exhibit 2) that the benefits provided therein are limited to narrowly defined situations. It is also abundantly clear that plaintiff did not qualify for those benefits. Mr. Miller was demoted not because there was insufficient work to perform but, in the opinion of his superior, Mr. Westfall, because of his lackluster performance of the work that he was required to perform. I find that age played no part whatsoever in GE's denial of lack of work status to the plaintiff. Additionally, I find that the fact that GE denied plaintiff lack of work status does not, singularly or in conjunction with the other evidence, suggest that the plaintiff was discriminated against based upon his age.

█ Next, plaintiff contends that GE discriminatorily blocked his efforts to obtain coequal employment within GE after his demotion. Again, I find that plaintiff has failed to sustain his burden of proving that age was a factor in these decisions. In each instance, GE has proffered legitimate nondiscriminatory reasons for its actions. Plaintiff has failed to show that these explanations are not worthy of credence or that they were pretextual. As to plaintiff's thwarted attempt to obtain employment on a contract basis, Mr. Westfall testified that he saw no reason to retain Mr. Miller on the payroll of the Philadelphia shop while Mr. Miller worked for a temporary period at the Tulsa nuclear power plant. As to plaintiff's thwarted attempt to interview in Schenectady, New York, for a manager's position, it was apparent that Mr. Westfall's only objection was that the plaintiff had not given proper notice and had not received proper approval. The time off for the interview was later approved, but the position had been filled in the interim. The mere fact that these transfers were effectively blocked could support an inference that the plaintiff was considered by GE to be too old for promotion. However, plaintiff has failed to establish this by a preponderance

of evidence, even when considered in light of all the other evidence and surrounding circumstances.

■ Another contention raised by the plaintiff is that GE has failed to give him certain raises in his salary as foreman and GE has failed to pay him overtime for additional hours he has worked as foreman. There is certainly no direct evidence that these decisions were based upon plaintiff's age. Again, the plaintiff relies upon the mere fact that these incidents have occurred in support of his claim of age discrimination. The difficulty with plaintiff's contention is that the mere denial of a raise or overtime pay to an individual in the protected age group does not, in and of itself, satisfy plaintiff's burden of proving that age was a factor in that decision. It may raise an inference of age discrimination, but plaintiff still has the burden of proving by a preponderance of evidence that age was a determining factor. In light of defendant's evidence that plaintiff's performance as foreman has, at best, been merely satisfactory and plaintiff's failure to establish that his treatment as to overtime deviated in any way from GE Policy, I conclude that plaintiff has failed to meet his burden of proving that age was a determining factor in those decisions.

Finally, at trial plaintiff contended that GE's failure to recommend him for treatment in GE's alcoholic rehabilitation/counseling program was based upon plaintiff's age. Mr. Westfall testified that he was aware that Mr. Miller had family problems and he had heard rumors that plaintiff had a drinking problem which resulted in the loss of his driver's license. Although GE did have a program for its employees who had problems with alcoholism, Mr. Westfall was under no duty to confront Mr. Miller and recommend that he participate. Mr. Miller testified that he never drank on the job. Moreover, there was no evidence that Mr. Miller ever came forward and suggested to anyone that his alcoholism was affecting his work performance. Therefore, I do not consider Mr. Westfall's reluctance to broach this subject with Mr. Miller to be unreasonable. Mr. Westfall made numerous suggestions to Mr. Miller for improvements in his performance. Mr. Miller's response to these comments and criticisms was primarily to suggest that the materials section was understaffed. In Mr. Westfall's opinion, this was simply inadequate.

■ Since plaintiff produced no direct evidence to suggest that Mr. Westfall failed to recommend Mr. Miller for alcoholic rehabilitation/counseling because of his age, and there was sufficient justification for Mr. Westfall's decision not to make such a recommendation, I conclude that plaintiff has failed to prove that his age was more likely the motivating factor or that defendant's justification is not worthy of belief.

In an age discrimination in employment trial, where plaintiff, as here, presents sufficient evidence to establish a prima facie case and the employer provides a nondiscriminatory explanation for the action taken, the fact finder is faced with the task of determining the employer's state of mind and motivation. Such fact-finding is at best imprecise. In the present case, it is clear that the corporate decision was that of Mr. Westfall, who came into the Philadelphia Apparatus Shop as manager, and undoubtedly as a "trouble shooter," whose job it was to locate the causes of inefficiencies and correct them, in order to re-establish the Shop as an efficient, profitable component of GE. Thus it is Mr. Westfall's actions, statements and motivations that must receive the main focus of attention.

The evidence establishes that Mr. Westfall's investigation convinced him that one of the most serious problem areas was within the materials section of the Shop. Mr. Westfall concluded that much of the fault centered upon ineffective supervision by the materials manager, Mr. Miller. An intra-corporate audit confirmed extensive problems in the materials section. Plaintiff, in effect, conceded that his section had problems, although he disagreed with Mr. Westfall's assessment of the extent and cause of the problems. More important to Mr. Westfall was Mr. Miller's lack of taking what Mr. Westfall perceived as being adequate plans to correct and remedy deficiencies. Mr. Westfall became dissatisfied with plaintiff's performance, and decided that

Mr. Miller lacked the ability and/or willingness to carry out an appropriate remedial program. At that juncture, he made the decision to replace Mr. Miller. Age was not a factor.

The replacement and demotion of Mr. Miller may have been heavy handed, and needlessly curt and unfeeling. It may or may not have been necessary, although there is credible evidence that the Philadelphia Apparatus Service Shop has once again, under Mr. Westfall's management, become a highly efficient part of GE. The totality of the evidence, both direct and circumstantial fails to establish that Mr. Miller's age was in any way a contributing or a determining factor in bringing about Mr. Miller's replacement and demotion. Likewise, as to any and all other complaints of Mr. Miller as to discrimination against him in his employment because of age, the evidence fails to establish by a preponderance of the evidence any discrimination on account of age.

To the extent that this Discussion contains findings of fact and conclusions of law not specifically set forth under those respective headings, the same shall be deemed additional findings of fact and conclusions of law.

### IV. CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and the subject matter and venue is proper in this district.

2. Plaintiff established a prima facie case of a discriminatory demotion under the guidelines announced in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as adopted in *Smithers v. Bailar,* 629 F.2d 892 (3d Cir.1980).

3. Defendant has articulated a legitimate, nondiscriminatory reason for plaintiff's demotion.

4. Plaintiff has failed to prove by a preponderance of the evidence that a discriminatory reason more likely motivated the defendant or that the defendant's reason for demoting the plaintiff was pretextual.

5. Plaintiff has failed to prove by a preponderance of evidence that age was a factor in:

(a) Defendant's refusal to place plaintiff on "lack of work status";

(b) Defendant's frustrating plaintiff's efforts to obtain coequal employment either within GE or outside of GE;

(c) Defendant's refusal to compensate plaintiff for overtime or to give plaintiff certain raises in salary in his present position as foreman; or

(d) Defendant's failure to recommend plaintiff for alcoholic counseling in GE's counseling program.

6. Plaintiff's alleged incidents of age discrimination, considered singularly and collectively, do not establish any violation of the Age Discrimination in Employment Act of 1967, as amended.

### ORDER

For the reasons set forth in the opinion filed contemporaneously herewith, judgment is entered in favor of the defendant and against the plaintiff on all claims of age discrimination asserted in Civil Action 79–3100.