Steven A. MADREPERLA

v.

The WILLIARD CO., et al.

Civ. A. No. 82–3505.

United States District Court,
E.D. Pennsylvania.

Jan. 3, 1985.

Leigh P. Narducci, Norristown, Pa., for plaintiff.

Frank C. Sabatino, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

VanARTSDALEN, District Judge.

This case presents a dispute concerning the termination of plaintiff's employment as president of one of the defendant corporations, Fire Control, Inc. Plaintiff's amended complaint asserts three basis for liability: age discrimination; breach of employment contract, and intentional infliction of emotional distress. Defendants have moved for summary judgment on all three counts.

In deciding a motion for summary judgment the court must determine whether the moving party has carried its burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). All reasonable inferences from the evidentiary material of record must be drawn in favor of the non-moving party. *Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir.1980). A response to a properly supported summary judgment motion may not rest upon the allegations of the pleading but must present, by affidavit or otherwise, specific facts sufficient to create a genuine issue of material fact. Fed.R.Civ.P. 56(e); *Sunshine Books, Ltd. v. Temple University*, 697 F.2d 90, 96 (3d Cir.1982).

In the present case, defendants are corporations engaged in the fire control sprinkler industry: The Williard Company (Williard); Fire Control, Inc. (FCI); Fire Protection Industries (FPI), and Worsham Sprinkler Company, Inc. (Worsham). During the time relevant to this case, Williard owned all the stock in FCI, and FCI was the parent company of both FPI and Worsham.

Plaintiff, Steven A. Madreperla (Madreperla) had been the president of FPI before it was acquired by Williard. FCI was set up by Williard to oversee the operations of both FPI and Worsham. Madreperla was given a five-year contract as president of FCI.

During the summer of 1981, new management took control of Williard and its subsidiaries. Bernard Jourdan became president of Williard in November 1981. There was a considerable degree of friction between Madreperla and Jourdan concerning the operation of FCI, FPI and Worsham. Eventually, Madreperla's employment was terminated, and he brought this action.

### I. *Age Discrimination Claim*

The Age Discrimination in Employment Act (ADEA) makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To recover under the ADEA, a plaintiff must prove by a preponderance of evidence that age was "a determinative factor" in the employer's decision. *See Smithers v. Bailar*, 629 F.2d 892 (3d Cir.1980). Plaintiff need not prove that age was the employer's sole or exclusive consideration but must prove that "age made a difference" in that decision. *Id.* at 898.

A plaintiff can establish a prima facie case of age discrimination using statistical information, direct evidence of discrimination and/or circumstantial evidence. *Miller v. General Electric Co.*, 562 F.Supp. 610 (E.D.Pa.1983). A prima facie case can be established by showing: (1) that the plaintiff was within the protected age group; (2) that the plaintiff was qualified for the position; (3) that the plaintiff was removed from the position; and (4) that the position was filled by a younger person. *Smithers*, 629 F.2d at 894–95. These guidelines are borrowed from the Supreme Court's Title VII decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to

the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). If the defendant satisfies that burden of production, the inference or presumption of discrimination dissolves, and the plaintiff must satisfy its burden of persuasion by convincing the trier of fact that (1) a discriminatory reason actually motivated the employer or (2) the employer's proffered explanation is unworthy of credence. *Miller v. General Electric Co.,* 562 F.Supp. at 617; *see also Blackwell v. Sun Electric Corp.,* 696 F.2d 1176 (6th Cir.1983).

■ Simply establishing a prima facie case is not necessarily sufficient to survive a summary judgment motion. The prima facie showing establishes a presumption which is destroyed upon defendant's satisfaction of its burden of production. *Reeves v. General Foods Corp.,* 682 F.2d 515 (5th Cir.1982). "The initial evidence introduced to support the prima facie case may or may not be adequate, after the presumption has disappeared, for a jury to draw a permissible inference of intentional discrimination." *Id.* (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981)).

In the present case, defendants claim that plaintiff has not established a prima facie case of age discrimination. They claim that Madreperla was not removed from his position and replaced by a younger person. Rather, they assert that Madreperla's position was effectively eliminated and that he refused the offered replacement position.

There is no dispute that Madreperla is in the protected age group or that he was qualified for the position he held. Plaintiff asserts he was removed from his position as president of FCI when he received a letter of termination on June 2, 1982, and that his duties were taken over by newly appointed presidents for FCI and FPI and a vice president of Williard; namely Robert Rambo, Joseph Doody and Ed Caplan, all of whom are significantly younger than Madreperla. Defendants characterize plaintiff's termination differently. They claim that labor disputes and Jourdan's policy of retrenchment to reduce losses made it necessary for FCI to cease its function of controlling the operations of FPI and Worsham. Consequently, defendants "eliminated the essence of the FCI presidency" and offered the successor position, the presidency of FPI, to Madreperla.

■ Defendant's evidence bears on the motivation for Madreperla's termination, not on the adequacy of plaintiff's prima facie showing. Madreperla was removed from his position by defendants, and he has submitted sufficient evidence to find that he was replaced by younger persons. Whether Madreperla's "position" is viewed formalistically (as the presidency of FCI) or functionally (as responsibility for the operation of FCI, FPI and Worsham), there is sufficient evidence to find that the prima facie case has been established.

■ Moreover, despite defendants' evidence that there were legitimate business reasons for Madreperla's discharge, they are not entitled to summary judgment on the ADEA claim. Plaintiff has submitted sufficient evidence to create an issue of fact whether age was "a determinative factor" in the decision to discharge.

In addition to the evidence bearing on the prima facie case, plaintiff has presented circumstantial and statistical evidence of age discrimination. Plaintiff has submitted handwritten memoranda and notes and one oral statement of Bernard Jourdan indicating consciousness of and concern about the age of management personnel. Although this evidence by itself is of doubtful weight, *see Stendebach v. CPC International, Inc.,* 691 F.2d 735 (5th Cir.1982), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983), it must be taken in conjunction with all of the evidence of record and every inference must be drawn in favor of the plaintiff on the motion for summary judgment. Plaintiff has also sub-

mitted evidence that, shortly after new management took over Williard, Larry Shprintz, president of Williard, and George Meany, president of PSG,[1] were also replaced by younger people. In addition, plaintiff claims that of thirteen individuals in the officer/manager category of employment at FCI, FPI and Worsham only two are above the age of forty.

Defendants vigorously contest the significance of all of this evidence. Taken as a whole with every inference drawn in plaintiff's favor, the evidence creates an issue whether age was a determinative factor in Madreperla's discharge. Defendants are not entitled to summary judgment on the ADEA claim.

## II. Contract Claim

Madreperla had a five-year employment contract as president of FCI that was due to expire on June 1, 1986. He was discharged from employment on June 2, 1982. Despite these undisputed facts, defendants seek summary judgment on the contract claim. They assert two basis for summary judgment: first, that Madreperla breached the contract and released defendants from any obligations; and second, that the contract claim is barred by the doctrine of frustration of purpose.

### A. The "Best Efforts" Clause

Madreperla's contract required him "to use his best efforts" in carrying out his duties as president of FCI. It further provided that he could be discharged for cause upon "failure ... to perform or observe any of the terms or provisions of [the] Agreement." Defendants claim that Madreperla failed to use his best efforts in carrying out his duties as president and, therefore, that they were permitted under the contract to discharge him.

■ Whether someone has used his best efforts in carrying out his duties is an inherently factual determination depending on all of the circumstances. *Cf. Commonwealth Department of Property & Sup-*

*plies v. Berger*, 11 Pa.Commw. 332, 312 A.2d 100 (1973) (whether there is a basis for dissatisfaction with performance of a contract is properly a question for the finder of fact). *See generally Lowell v. Twin Disc, Inc.*, 527 F.2d 767, 771–72 (2d Cir. 1975) (noting that the issue whether plaintiff satisfied "best efforts" provision of contract was submitted to jury). On the basis of the evidence of record, defendants are not entitled to summary judgment on grounds of breach of contract by the plaintiff. Plaintiff has submitted substantial evidence indicating that he satisfied the "best efforts" clause. Such evidence includes Madreperla's eight-page memo of December 4, 1981 to Jourdan answering point-for-point each of the concerns raised by Jourdan and various other memos from Madreperla memorializing his activities, directing action from his subordinates and reporting to his superiors. *See* Exhibits E and F in the Appendix to Plaintiff's Brief Contra Defendants' Motion for Summary Judgment.

### B. Frustration of Purpose

■ The defendants assert that Madreperla's contract claim is barred by the doctrine of frustration of purpose. That doctrine is defined in the Restatement (Second) of Contracts § 261 (1979):

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render performance is discharged, unless the language or the circumstances indicate the contrary.

Pennsylvania law accepts the principle of frustration of purpose. *Alvino v. Carraccio*, 400 Pa. 477, 162 A.2d 358 (1960); *Greek Catholic Congregation of Olyphant v. Plummer*, 338 Pa. 373, 382, 12 A.2d 435, 439 (1940).

---

1. PSG is a company that was acquired by the new management at the same time they acquired Williard and FCI. Plaintiff refers to PSG as "Philadelphia Suburban Group," but Jourdan has identified PSG as "Professional Services Group." Needless to say, this discrepancy does not present a dispute as to a material issue of fact.

Defendants claim that the change in the operation of FCI, FPI and Worsham that took place contemporaneously with Madreperla's discharge frustrated the purpose of Madreperla's employment contract. FCI was created in order to operate jointly FPI and Worsham. This arrangement was required by the labor laws because FPI is a union company and Worsham is nonunion. The union labor at FPI was unhappy with this double-breasted operation and sought to force the sale of Worsham. Jourdan planned to operate FPI and Worsham independently of each other and reduce FCI to a financial holding company performing only accounting and financial services for FPI and Worsham. Labor apparently agreed to this compromise, and it is the structure now existing. Jourdan viewed Madreperla's role as the responsibility for operation of FPI and so tried to get him to resign the FCI presidency and accept the presidency of FPI. Madreperla opted to remain president of FCI under his existing contract rather than accept the presidency of FPI under a contract with less favorable terms. Madreperla was then discharged from his position as president of FCI and was replaced by Robert Rambo. FCI continues to exist with Rambo as its president.

Defendants cite several cases for the proposition that the obligations of an employment contract cease when the employer ceases to exist. *McKinney v. National Dairy Council,* 491 F.Supp. 1108, 1111 (D.Mass.1980); *Alabama Football, Inc. v. Wright,* 452 F.Supp. 182, 185 (N.D.Tex. 1977), *aff'd mem.,* 607 F.2d 1004 (5th Cir. 1979). In the present case, however, FCI continues to exist, and it still has a president. Moreover, if frustration of purpose were the only objection to continuing performance of the contract, the equity of the situation would suggest that Madreperla, at least, ought to have been offered the presidency of FPI under terms identical to his existing FCI contract.

 Madreperla's contract for the presidency of FCI, after all, was approved by Williard and signed by Lawrence Shprintz as president of Williard. Williard has not ceased to exist. The business operations continued; only the structure and operation of the corporate entities was altered. Williard has not established that it could not have foreseen potential labor difficulties when it set up the double-breasted operation. A business with a complicated corporate structure cannot avoid the obligations of an employment contract by simply shuffling jobs from one subsidiary to another. Defendants have not established that Madreperla's contract claim was barred by frustration of purpose. Summary judgment on plaintiff's contract claim will be denied.

### III. *Emotional Distress*

In the third count of the amended complaint, Madreperla claims that the events surrounding his discharge constituted intentional infliction of emotional distress. The Restatement (Second) of Torts § 46(1) describes the tort of intentional infliction of emotional distress:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The courts of Pennsylvania have accepted the general principles of § 46 of the Restatement, *Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970); *Jones v. Nissenbaum, Rudolph & Seidner,* 244 Pa.Super. 377, 368 A.2d 770 (1976).

The Third Circuit has noted that there are four elements to an action for intentional infliction of emotional distress: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1273 (3d Cir. 1979). Before submitting a claim for intentional infliction of emotional distress to a jury the "court must determine, as a matter of law, whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct." *Id.* at 1274.

**880**

*See also* Restatement (Second) of Torts § 46 comment h.

 Intentional infliction of emotional distress is not a novel claim in the context of employment contract disputes. A premeditated plan to force an employee to resign by making employment conditions difficult typically does not amount to extreme or outrageous conduct sufficient to sustain a cause of action for intentional infliction of emotional distress. *Wells v. Thomas,* 569 F.Supp. 426 (E.D.Pa.1983); *Beidler v. W.R. Grace,* 461 F.Supp. 1013 (E.D.Pa.1978), *aff'd mem.,* 609 F.2d 500 (3d Cir.1979). Certain types of conduct by employers, however, such as sexual harassment, can constitute extreme or outrageous conduct. *E.g., Shaffer v. National Can Corp.,* 565 F.Supp. 909, 914–16 (E.D.Pa. 1983). In *Cautilli v. GAF Corp.,* 531 F.Supp. 71, 74 (E.D.Pa.1982), the court held that "[c]onduct by an employer inducing an employee into committing himself to continued employment, while the employer knows that a change in circumstances may require the employee to relocate his home" did not amount to extreme or outrageous conduct sufficient to support a claim for intentional infliction of emotional distress. Judge Becker noted that he did "not believe that [the courts of Pennsylvania] would extend this tort to cover an employment contract dispute such as that before us." *Id.*

 In the present case there is no conduct sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress. The facts taken in a light most favorable to the plaintiff might permit the inference that defendants offered him a lesser contract in an intentional effort to force him to resign. Moreover, according to the plaintiff, defendants offered plaintiff the choice of the FPI presidency under a lesser contract or continuation of the FCI presidency under his current contract. When the plaintiff chose to remain under his current contract he was discharged. This case presents an employment dispute with a notable paucity of harassment. The defendants confronted the plaintiff with a problem and, when that problem could not be worked out, terminated his employment. That termination may or may not have violated certain legal rights of the plaintiff, but it does not amount to conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 comment d (1965).

For the reasons expressed above, defendants' motion for summary judgment will be granted as to plaintiff's claims for intentional infliction of emotional distress and denied as to plaintiff's claims for age discrimination and breach of contract.