629 F.2d 892
 23 Fair Empl.Prac.Cas. 1206,
24 Empl. Prac. Dec. P 31,219
SMITHERS, Harry J., Appellant,
v.
BAILAR, Benjamin F., Postmaster General, United States
Postal Service and United States Postal Service.
 No. 79-2748.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 4, 1980.
Decided Sept. 2, 1980.
 
 Edward L. Welch (argued), Edwardsville, Ill., Pamela A. Baken, Englewood, N. J., for appellant.
 Robert J. Del Tufo, U. S. Atty., Stephen D. Taylor, Asst. U. S. Atty. (argued), Newark, N. J., Stanely A. Mestel, Regional Labor Counsel, United States Postal Service, Washington, D. C., for appellees.
 Before ALDISERT and SLOVITER, Circuit Judges, and HANNUM, District Judge.*
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 The question for decision is whether the district court applied improper legal precepts in deciding against a postal employee in an action brought against the United States Postal Service under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-634, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to e-17. Following submission of the case on the administrative record, the district court rendered judgment in favor of the Postal Service. The employee, Harry J. Smithers, has appealed. Determining that there was no error, we affirm.
 
 
 2
 Appellant, a black male, was 64 years of age in 1975 when he applied for the postmaster's position at the Montclair, New Jersey post office. At that time he was Montclair's assistant postmaster. The National Management Selection Board, charged with the responsibility of filling the position, interviewed appellant and two others on June 6, 1975. At the conclusion of the interviews, the Board unanimously agreed that the post would go to John J. Barry, then 37 years of age. The executive secretary of the Board summarized the Board's reasons for the decision:
 
 
 3
 The Board members found Mr. Barry to have excellent potential beyond Montclair. Very capable but vague in some of his answers. Has a broad picture of postal operations even though he lacks extensive operations experience in a large facility. Has an in-depth view of problems. Articulate. Knowledgeable in dealing with people. Operated a medium size post office.
 
 
 4
 Smithers v. Bailar, Civ. No. 77-0949 (D.N.J. Sept. 28, 1979). With respect to appellant, the secretary noted:
 
 
 5
 Mr. Smithers has done well working his way up the career development ladder. Good experience. Vague in his answers. Wants the title of postmaster for prestige. Could hold fort but question his judgment of the managers in his office. A product of the seniority system. Very personable.
 
 
 6
 Id. at 8.
 
 
 7
 Appellant thereafter initiated administrative proceedings alleging age and race discrimination. A hearing was conducted before an Equal Employment Opportunity complaints examiner from the United States Civil Service Commission on January 13 and 14, 1977. The complaints examiner's findings and recommended decision concluded that the reasons appellant was not chosen to be the Montclair postmaster were unrelated to race or age. The Postal Service adopted the examiner's findings and conclusions. Thereafter the Equal Employment Opportunity Commission issued a right to sue letter and appellant filed the present civil action in the district court. The parties stipulated to certain evidence and agreed that the issues of age and race discrimination would be submitted without testimony or evidence other than that contained in the transcript of the administrative record. They also agreed to allow the court to "make whatever credibility resolution and evidentiary decision . . . may be necessary . . . ." Id. at 2 n.2.
 
 I.
 
 8
 The district court's analysis of the age discrimination claim began with an inquiry whether appellant had established a prima facie case of age discrimination by satisfying the four criteria set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973):
 
 
 9
 The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 
 
 10
 Quoted in Smithers at 12-13.
 
 
 11
 Although these guidelines arose in the Title VII context, they have been deemed applicable to cases arising under the ADEA. Rodriguez v. Taylor, 569 F.2d 1231, 1239 (3d Cir. 1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); see Holliday v. Ketchum, McCleod & Grove, Inc., 584 F.2d 1221, 1231 n.1 (3d Cir. 1978) (in banc) (Hunter, J., concurring); cf. Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979) (analogous sections of ADEA and Title VII to be construed similarly); but see Lorillard v. Pons, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). Appellant concedes in his brief that "(t)here appears to be no dispute on this issue, that the McDonnell Douglas criteria (apply) to age discrimination cases." Appellant's Brief at 25. Notwithstanding its applicability, the Supreme Court has recently warned that the McDonnell Douglas methodology should never be applied in a "rigid, mechanized, or ritualistic" manner. Furnco Construction Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Rather, the Court has instructed that "it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." Id. The Court explained that a prima facie case raises an inference of discrimination only because the conduct at issue is presumed to be based on consideration of impermissible factors in the absence of another explanation. Thus the inference dissolves when the employer shows a legitimate, non-discriminatory reason for the conduct. Id. In Furnco, the Court of Appeals went awry by equating a prima facie showing under McDonnell Douglas with an ultimate finding of a Title VII violation. As the Supreme Court noted, the two are different and maintaining this distinction is essential. The district court in the present case carefully avoided the lower court's error in Furnco.
 
 A.
 
 12
 The district court first determined that appellant had established a prima facie case of age discrimination:
 
 
 13
 He has shown that (1) he belonged to the protected class, (2) that he applied and was qualified for the position of Postmaster and could reasonably expect selection under the post office's ongoing competitive promotion system, (3) that he was not appointed despite his qualifications, and (4) that the position was ultimately filled by an employee who was younger than plaintiff.
 
 
 14
 Smithers at 13. Consistent with the rule of McDonnell Douglas and Furnco, however, the court did not end its inquiry at this point.
 
 
 15
 The court then examined the defendant's burden to dispel the adverse inference from a prima facie showing under McDonnell Douglas, and concluded that the employer must "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Furnco Construction Corp. v. Waters, 438 U.S. at 578, 98 S.Ct. at 2950. See also Board of Trustees v. Sweeney, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (per curiam); Worthy v. United States Steel Corp., 616 F.2d 698, 701 (3d Cir. 1980); Ostapowicz v. Johnson Bronze Co., 541 F.2d 394 (3d Cir. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). After considering the filed affidavits and testimony relating to the alleged factors that gave rise to the appointment of Barry, the court concluded that the defendants had fulfilled their burden of producing evidence of a non-discriminatory basis for the Board's action. In reviewing the administrative proceedings, the district court noted the Board's concession that Smithers was the most qualified applicant on the basis of employment history and experience, and that both Barry and Smithers were equally knowledgeable in the areas of policy, procedure, and operation. Nevertheless, the "general concern" of the Board, as found by the court, was that "Barry was more articulate and could present himself and his position more clearly than could Smithers." Smithers at 15. The significance of the interviews, at which these subjective assessments were made, was emphasized by each Board member in individual affidavits. Id.
 
 
 16
 The complaint examiner reached a similar conclusion:
 
 
 17
 Mr. Barry's more favorable presentation provided a reasonable basis for his being recommended. There is no evidence of pretext, nor is there any evidence of discriminatory animus on the part of any Board member. Additionally, the record shows that the Board did not base its decision on any standard or evaluation device which had a discriminatory impact on the complainant on the basis of his race or age.
 
 
 18
 Id. (quoting EEO Complaint Examiner Report, app. at 377). On this basis the EEOC denied appellant's claim.
 
 B.
 
 19
 Satisfied that appellee had established a valid non-discriminatory reason for rejecting appellant, the district court addressed appellant's argument that these reasons were merely a pretext for illegal discrimination. Smithers at 15. The district court was impressed by the Board's findings that Barry was more articulate, that his managerial capability was more developed, and that Smithers did not display every nuance of good judgment in his assessment of the abilities of the various office managers.
 
 
 20
 Some evidence in the record indicated that the Board considered the applicants' "potential", looking beyond the postmastership at Montclair. This evidence related to a possible consideration of age. Even considering this testimony, the district court concluded that appellant failed to prove "that this focus on potential was the determinative factor in the Board's selection decision." Id. at 20. Although admitting that some of the Board's criteria could not survive scrutiny, the court held that "there remains a sufficient and determinative reasonable basis aside from plaintiff's age, upon which the Board based its decision." Id. at 21 (emphasis added). Thus, considering all the evidence, the court concluded that the reasons given by the Board for the decision were not a pretext for age discrimination and that Smithers would have been passed over regardless of his age.
 
 II.
 
 21
 Appellant attacks the court's test for deciding whether appellees rebutted the prima facie case. The court expressed its reasoning in various passages of its opinion best summarized in the following passage:
 
 
 22
 There is insufficient evidence from which to forge a causal link between the plaintiff's age and his failure to be awarded the promotion. . . .
 
 
 23
 (T)here remains a sufficient and determinative reasonable basis aside from the plaintiff's age, upon which the Board based its decision. This is a lawful practice envisioned under 29 U.S.C. § 623(f).
 
 
 24
 After full and careful consideration of all of the evidence presented, this court is convinced that although plaintiff's age was a factor in the Board's decision, it was not the determinative factor.
 
 
 25
 Id. at 20-21. See also id. at 15, 22.
 
 A.
 
 26
 The appellant's attack on the test applied by the district court focuses on the description of the plaintiff's burden. Appellant contends that the court erred in burdening the plaintiff with proving that age was "the determinative factor" instead of "a determinative factor" in the selection of Barry. This argument has a superficial appeal because obviously the plaintiff need only prove that age was somehow determinative of the Board's decision. Perhaps the formulation by the district court would have been more clear if it had used the indefinite rather than the definite article. This difference should not be overemphasized, however, because important statements may easily and critically be altered simply by removing them from context. Recognizing this possibility of distortion in jury instructions, an appellate court reviews the charge as a whole, preserving context. Ayoub v. Spencer, 550 F.2d 164, 167 (3d Cir.), cert. denied, 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977). The same approach applies to reviewing a trial court's opinion.
 
 
 27
 We emphasize that appellant attacks a series of sentences contained in the trial court's justification for its decision and not a court's instruction to a jury. Unlike a jury instruction, a trial court's stated reasons for a decision are not held to the highest degree of precision. On the other hand, a trial judge's charge must be expressed in appropriate legal precepts and in language comprehensible to lay jurors. A trial court's opinion serves a different purpose. It resembles a public explanation of a particular dispute's resolution. Unlike the opinions of multi-judge tribunals, a trial court's opinion carries no controlling precedential effect. Thus, although we prefer that trial courts express their reasoning in the best possible form, we recognize that the pressures of daily trial schedules prevent trial judges from having either the time or the collegial input present on an appellate level to insure maximum precision in expression. As a result, an appellate court must carefully examine a trial court's statements to discern what the court meant in the opinion as a whole, rather than what was stated particularly in isolated sentences.
 
 
 28
 Measured by this test, we are convinced that the trial court here did not intend to distinguish between age as "a determinative factor" and as "the determinative factor." We reach this conclusion because the authorities cited in the text and footnote to support the court's use of "the", used "a", rather than the definite article.[1]
 
 
 29
 A fair reading of the opinion as a whole reveals precisely what the court had in mind. In describing the weight age may carry before running afoul of the ADEA, the court relied on Laugesen v. Anaconda, 510 F.2d 307 (6th Cir. 1975), and statements in Mastie v. Great Lakes Steel Corp., 424 F.Supp. 1299, 1321 (E.D.Mich.1976). Smithers at 15 n.19. In Laugesen, a discriminatory discharge case, the court employed a two-part test for deciding ADEA claims: first, plaintiff must show that age was one factor considered by the employer and second, plaintiff must prove that age made a difference in the disputed decision. 510 F.2d at 317. The Laugesen court, reciting the familiar tort law principle that there may be more than one proximate cause of an event, held that plaintiff need not prove age to be the sole or exclusive cause of the action. Rather, plaintiff must establish that age played a part in the decision, even though the employer could demonstrate strong and perhaps more compelling non-discriminatory reasons for his actions. The Mastie court interpreted Laugesen to mean that the employer's consideration of age must have been "a determinative factor" in the decision. 424 F.Supp. at 1321-22.[2] We find additional evidence of the district court's use of age as "a determinative factor" in its quotation of the legislative record and the Department of Labor regulations, both of which use this language.[3]
 
 
 30
 Thus, we are persuaded that although isolated statements in the district court's opinion say that appellant failed to prove age was "the determinative factor" in the Board's decision, the opinion taken as a whole concluded that plaintiff failed to prove age was "a determinative factor." In doing so, the court properly recognized that a plaintiff need not prove that age was the employer's sole or exclusive consideration, but that he must prove by a preponderance of the evidence that age made a difference in deciding the promotion, retention, or discharge. See also Board of Trustees v. Sweeney, 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978) (per curiam). We find no error in the district court's use of this test.
 
 III.
 
 31
 In its opinion, the trial court briefly discussed appellant's Title VII claim. The court concluded that "there is no evidence appearing in the record or adduced by plaintiff which supports a claim of racial discrimination." Smithers at 9. The court noted that appellant established a prima facie case as set forth in McDonnell Douglas. The court held, however, that appellant failed to carry his ultimate burden of establishing by a preponderance of the evidence that he was discriminated against because he is black. Smithers at 9 n.10 (citing Croker v. Boeing Co. (Vertol Div.), 437 F.Supp. 1138, 1183 (E.D.Pa.1977)). We are satisfied that if the court considered the complaint as alleging a case under the disparate treatment theory it applied the proper legal precepts.
 
 
 32
 We recently articulated a plaintiff's ultimate burden of proof under the disparate treatment theory in Kunda v. Muhlenberg College, 621 F.2d 532, 541-43 (3d Cir. 1980), and in Whack v. Peabody and Wind Engineering Co., 595 F.2d 190, 193 (3d Cir. 1979). A plaintiff in a civil rights disparate treatment case must first establish a prima facie case of racial discrimination. After plaintiff has established a prima facie case, the employer must articulate some legitimate non-discriminatory reason for its action. If the employer can articulate such a reason, it will prevail unless plaintiff can prove by a preponderance of the evidence that the employer's stated reason was a mere pretext for discrimination. The plaintiff in a disparate treatment case must prove as an integral part of his or her case not only "the existence of disparate treatment but also that such treatment was caused by purposeful or intentional discrimination." Presseisen v. Swarthmore College, 442 F.Supp. 593, 599 (E.D.Pa.1977), aff'd, 582 F.2d 1275 (3d Cir. 1978); see also, Teamsters v. United States, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977); Rivers v. Westinghouse Electric Corp., 451 F.Supp. 44, 48 (E.D.Pa.1978).
 
 
 33
 As in the age claim, we are persuaded that appellee established the required legitimate reasons not related to race why appellant was not selected. The EEO examiner found that there "is no evidence of pretext, nor is there any evidence of discriminatory animus on the part of any Board member." Smithers at 15 (quoting EEO Complaint Examiner Report, app. at 377). In addressing the pretext issue, the district court concluded: "The totality of factors proffered by the Board to be the legitimate considerations which led them to appoint Barry have not been shown to be a subterfuge." Smithers at 20-21. When the defendant established to the satisfaction of the court legitimate reasons not related to race for rejecting Smithers, the inference of discrimination suggested by the prima facie case dissipated. Furnco, 438 U.S. at 577, 98 S.Ct. at 2949. Plaintiff, at bottom, was required to demonstrate a racial motive for the decision by a preponderance of relevant, credible evidence. The district court determined he did not meet this ultimate burden. On the basis of record evidence, we cannot fault the district court's determination.
 
 
 34
 Appellant's analysis of statistics from the Northeast Region and the Northern New Jersey District[4] suggests that he may have also relied on the disparate impact theory. To prove racial discrimination under the disparate impact theory, Smithers had to demonstrate that the employment of members of his race was disproportionately low due to a seemingly neutral policy. Griggs v. Duke Power Co., 401 U.S. 424, 430-32, 91 S.Ct. 849, 853-54, 28 L.Ed.2d 158 (1971). He failed to establish the existence of such a policy. Moreover, the statistics do not present a convincing case. Whether offered by Smithers as support for disparate treatment or impact theory, as part of appellant's prima facie case, or as an attempt to prove appellee's evidence of non-discriminatory reasons to be a pretext, Whack v. Peabody and Wind Engineering Co., 595 F.2d at 193 n.8, these statistics qua statistics are of no help. At best, they relate only to whether the Postal Service, particularly the Board, discriminated on a national basis in the selection of postmaster positions level 24 and above. Since regional, and not national, boards are responsible for postmaster positions level 23 and below, including Montclair, the regional statistical data for the higher positions are not relevant. Thus, Smithers offered no evidence tending to prove the alleged disparate racial impact flowing from hiring procedures in his region. Moreover, not all positions of level 24 and over are postmaster positions. More important, the data do not indicate the percentage of black candidates who apply for all postmaster positions or those who did apply for postmaster positions level 24 and above. As recent cases have noted, statistics must bear some direct relationship to the applicant pool and the position sought. See Hazelwood School District v. United States, 433 U.S. 299, 308 n.13, 97 S.Ct. 2736, 2742, n.13, 53 L.Ed.2d 768 (1977); Mazus v. Pennsylvania Dept. of Transp., 629 F.2d 870 (3d Cir. 1980); Hester v. Southern Railway Co., 497 F.2d 1374 (5th Cir. 1974). Appellant's statistics fail to bear a sufficient relationship to the conduct at issue.
 
 
 35
 Accordingly the judgment of the district court will be affirmed.
 
 
 
 *
 Honorable John B. Hannum, of the United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Compare text of Smithers at 15 ("the determinative factor") with the quotations from Mastie v. Great Lakes Steel Corp., 424 F.Supp. 1299, 1321-22 (E.D.Mich.1976), and Laugesen v. Anaconda, 510 F.2d 307, 317 (6th Cir. 1975), which the court cites to support its expression of the test ("a factor"). Smithers at 15 n.19
 
 
 [2]
 Subsequent decisions in other circuits support this formulation of the test. See, e. g., Loeb v. Textron, Inc., 600 F.2d 1003, 1019-20 (1st Cir. 1979); Cleverly v. Western Electric Co., 594 F.2d 638, 641 (8th Cir. 1979); Kentroti v. Frontier Airlines, Inc., 585 F.2d 967, 974 (10th Cir. 1978). Cf. Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 285, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977) (analogous case in which exercise of first amendment rights may have played a part in school board's decision not to rehire teacher)
 
 
 [3]
 "The purpose of this legislation, simply stated, is to insure that age, within the limits prescribed herein, is not a determining factor in a refusal to hire." S.Rep.No.723, 90th Cong., 1st Sess. 7 (1967) (emphasis added)
 "The clear purpose is to insure that age, within the limits prescribed by the Act, is not a determining factor in making any decision regarding hiring, dismissal, promotion, or any other term, condition, or privilege of employment of an individual." 29 C.F.R. § 860.103(c) (emphasis added). Quoted in Smithers at 16 n.19.
 
 
 [4]
 
 Percentage of Blacks
Employed by the U.S.
Postal Service 1974 1975
------------------------ ---- ----
 Nationwide 19.9 19.3
 Nationwide in Positions
 Level 24 and above 5.3 5.8
 Northeast Region Not Available 17.6
 Northeast Region in
 Positions Level 24
 and above Not Available 5.6
 Northern New Jersey
 District Not Available Not Available
 Smithers at 2 n.2.