**Joanne FREY and Stephanie Cardennis, Plaintiffs,**

v.

**PENNSYLVANIA AIRLINES and David Hartley, Defendants.**

No. 4:CV–90–2175.

United States District Court, M.D. Pennsylvania.

May 18, 1992.

---

Clifford A. Rieders, Williamsport, PA, for Frey and Cardennis.

Vincent Candiello, Audrey Feinman Miner, William J. Flannery, Morgan, Lewis & Bock-

ius, Harrisburg, PA, for Pennsylvania Airlines.

Fred A. Holland, Vincent Candiello, Audrey Feinman Miner and William J. Flannery, Murphy, Butterfield and Holland, Williamsport, PA, for David Hartley.

*MEMORANDUM*

McCLURE, District Judge.

### BACKGROUND

On December 21, 1990, plaintiffs Joanne Frey and Stephanie Cardennis filed this civil rights action against Pennsylvania Airlines ("Penn Air") and David Hartley, their former employer and manager, respectively, alleging discrimination on the basis of sex. Specifically, counts I and V of the complaint allege that Penn Air discriminated against each of the plaintiffs on the basis of sex and subjected them to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"). Counts II and VI allege that Penn Air discriminated against each of the plaintiffs on the basis of sex and subjected them to a hostile work environment in violation of the Pennsylvania Human Relations Act, 43 Pa.Stat.Ann. §§ 951–963, ("PHRA"). Finally, counts III and IV allege sexual discrimination, hostile work environment and harassment in violation of both Title VII and the PHRA against Hartley. Counts IV and VII, alleging wrongful discharge, were dismissed by an earlier order of the court.

Currently before the court are the defendants' motions for summary judgment and to strike the plaintiffs' jury trial demand. In their response, plaintiffs have agreed that this action should not proceed against Hartley, who is no longer employed by Penn Air. Accordingly, the action will be dismissed, with prejudice, as to Hartley.

### RELEVANT FACTS

The facts, read in a light most favorable to the plaintiffs, are as follows:

Joanne Frey was hired by Penn Air as a Customer Service Agent ("CSA") on November 17, 1986. Stephanie Cardennis was hired by Penn Air as a part-time CSA on November 23, 1987. Both Frey and Cardennis were assigned to work at the Williamsport Lycoming County Airport. David Hartley was employed by Penn Air as a Customer Service Manager, and was transferred from Hartford, Connecticut to the Williamsport Lycoming County Airport in July of 1988.

During Hartley's tenure the employees of Penn Air regularly used language which was sexually derogatory towards women. Hartley did not discourage the disparaging remarks, and on several occasions made such remarks himself. Specifically, Hartley regularly made comments about women's breasts and joked about impregnating his female subordinates. On one occasion he told Frey that if she wanted a raise, she should go to his home to mop his floors and fool around. He stated further that he would teach Frey all she needed to know about the other stuff, and if she was good, she would get a bigger raise than Penn Air could ever give her. Several employees have indicated that language which was degrading, insulting or offensive to women was common-place at Penn Air. For example, Leslie Bloom, a male CSA, testified that Hartley "talked sexual all the time, it was dirty, just a dirty language all the time" and that Assistant Manager Brian Lavely "was about as bad". (Deposition of Leslie Bloom at p. 18 and 50). CSA John Bierley testified that the employees were "pretty free about sexual innuendos in the workplace" and at times "it got sufficiently intense that it was embarrassing or upsetting or degrading, at least to some women." (Deposition of John Bierley at p. 44 and 53). He also acknowledged that Hartley participated in "talk putting down the female gender". (Id. at 20). The record is replete with similar statements from other employees.

When assigned to the Williamsport facility, Hartley claims that he adopted a policy of not reporting all workplace infractions. He attempted to be a "nice guy", and his decisions to discipline employees depended on the level of the infraction. Contrary to this policy, Hartley continually reported Frey and Cardennis for minor workplace infractions.

Upon the recommendation of Hartley, on August 19, 1989, Rick Schwartz, Director of

Stations for Penn Air, terminated Frey's employment. Significantly, in May of 1989, Hartley wrote a letter to Schwartz recommending that Frey be let go as soon as possible. At his deposition, he stated that this recommendation was made to improve the attitude and the work environment. However, he did not have any specifics as to Frey's attitude as of May 1989, and several other employees have indicated that Frey's attitude was the same, if not better, than the other employees. In July of 1989, CSA Supervisor Canouse prepared an evaluation of Frey at Hartley's request. Canouse rated Frey as average in the areas of overall attitude, ability to work with fellow employees, customer contact ability, technical ability, initiative and overall job performance. He rated her as above average in dependability.

Although Penn Air's formal stated reason for Frey's discharge was her disciplinary record, many similar and more serious infractions, noted below, went unpunished when committed by male employees. In addition, many of the charged infractions occurred under questionable circumstances. Specifically, Penn Air contends that Frey was discharged for the following series of infractions: 1) a cash drawer shortage in September 1988, 2) a customer complaint in January 1989, 3) failure to follow procedure for calling in sick in February 1989, 4) giving Hartley's home telephone number to a customer in May 1989, 5) failure to screen passengers for a competitor's flight in June 1989, 6) failure to close and lock the safe door in August 1989, and 7) failing to secure the combination of the safe in August 1989.

Aside from the two initial infractions, dubious circumstances surrounded each of these incidents. Frey was disciplined not for failing to call in sick, but for calling in sick to CSA Supervisor Mark Canouse, instead of Hartley. She was disciplined for giving a business card with Hartley's home telephone number to a customer, when it was Hartley himself who had written his home telephone number on the back of the business card. She was disciplined for failing to screen passengers on a competitor's flight, even though, at the time, she was servicing Penn Air passengers, who, according to her supervisors, were supposed to come first. Although she was suspended for failing to close and lock the safe, the safe was often left open overnight by other employees with no repercussions. Finally, while she was punished for failing to secure the safe combination, the combination was never treated as an item which should be secured. Hartley issued new combinations to the employees by leaving it on a slip of paper in their open mail slots.

Upon the recommendation of Hartley, on November 19, 1989, Schwartz terminated Cardennis's employment. Notably, a few months earlier, in August of 1989, CSA Supervisor Canouse prepared an evaluation of Cardennis at Hartley's request. Canouse rated Cardennis as average in the areas of overall attitude, ability to work with fellow employees, customer contact ability, technical ability, initiative, dependability and overall job performance.

Although the stated reason for Cardennis's discharge was her history of tardiness and abuse of sick leave, like Frey, questionable circumstances accompanied many of Cardennis's charged infractions. Although Cardennis had experienced some attendance problems from March 1989 to October 16, 1989, Schwartz discussed the problem with her, which apparently had arisen from her dissatisfaction at not being placed on full-time status, and told her that they were to start fresh as of that day, October 19, 1989.

On October 23, 1989, Cardennis was seen working at the Alley Kat Kafe after she had called in sick at Penn Air. She was cited for abuse of sick leave and suspended for seven days, even though she claimed that she was in fact sick and worked at the Alley Kat Kafe only until they found her replacement for the night. She was then cited for continued absences on November 6 through 12 and November 15 and 16, and was subsequently fired. However, Penn Air's records indicate that she was not scheduled to work from October 27, 1989 to November 8, 1989, and November 10 and 11, 1989, and the information as to whether she was scheduled to work on November 8, 9 and 12 has been deleted. In addition, Cardennis provided Penn Air with a medical excuse from her doctor for

November 3 through 8, and November 11 and 12.

Significantly, several male employees with similar records of attendance were not terminated. The personnel file of CSA David Falls contains an evaluation of August 1989, which indicates that he was late fourteen percent of the time over the previous year and that he needs to improve his attitude, language and work habits immediately. The file also contains a note of October 17, 1989, stating that Falls failed to make a bank deposit. Hartley's July 1989 performance evaluation of CSA Keith Schoch indicates that Schoch was late thirty-nine percent of the time over a seven-week period. There is no indication that Schoch was disciplined in any way for this.

Moreover, although numerous male employees were never formally disciplined for serious workplace infractions of which Hartley was aware, every infraction committed by Frey and Cardennis, no matter how minor, resulted in some action against them. Canouse and CSA Bierley damaged the de-icing tug by backing into a fence and failing to report the damage. Although Hartley indicated that it was a significant incident, neither Canouse nor Bierley was disciplined. CSA Bloom left a deposit bag in his open mail slot overnight and was not disciplined. CSA Keith Schoch and CSA Angelo Restivo closed the station but failed to store the de-icing tug in the freight room overnight, causing it to be inoperable the next day. Although this type of incident had happened in the past, Hartley took no action.

Finally, a male employee was hired to replace Frey. Although there is no indication that anyone was hired to replace Cardennis in her part-time CSA position, Cardennis was fired shortly after she was denied a full-time CSA position which was offered to a man.

## SUMMARY JUDGMENT STANDARD

■ Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved. Fed.R.Civ.P. 56. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The entire record must be examined in a light most favorable to the non-moving party. *Continental Insurance v. Bodie*, 682 F.2d 436, 438 (3d Cir. 1982). If there is no genuine issue of material fact, summary judgment may be granted to the party entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a plaintiff may not merely restate the allegations of his complaint. *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Nor can a plaintiff rely on self-serving conclusions, unsupported by specific facts in the record. *Celotex Corp. v. Catrett*, supra, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. A plaintiff must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the plaintiff fails to provide such evidence, then he is not entitled to a trial and the defendant is entitled to summary judgment as a matter of law. Fed. R.Civ.P. 56(e).

## DISCUSSION

### A. Sex Discrimination

■ Discrimination under the PHRA is analyzed in the same manner as discrimination under Title VII. *General Electric. Corp. v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 302–06, 365 A.2d 649, 654–57 (1976). Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an employee with respect to compensation, terms and conditions of employment, or benefits because of an individual's sex. 42 U.S.C. § 2000e–2(a). Each plaintiff's burden is a "but for" test whereby she must show that her gender was a reason for her discharge. *Id.* at 179. Plaintiffs are not required to prove that the discriminatory reason was the determinative factor, "but only that it was a determinative factor." *Id.* at 179 n. 1 (citing *Smithers v. Bailar*, 629 F.2d 892, 899 (3d Cir.1980). "More than one

'but for' cause can contribute to an employment decision, and if any one of those determinative factors is discriminatory, Title VII has been violated." *Id.* A plaintiff may meet her burden directly, by persuading the court it is more likely than not that her termination was motivated by a discriminatory reason, or indirectly, by showing that the defendant's proffered explanation is unworthy of credence. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 257, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207, 217–18 (1980); *Williams v. Giant Eagle Markets, Inc.,* 883 F.2d 1184, 1192 (3d Cir.1989).

■ The United States Supreme Court has instituted a burden shifting method to determine the viability of a discrimination claim under Title VII. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, a plaintiff must carry the initial burden of establishing a prima facie case of discrimination. This prima facie case will vary depending on the facts of the case. *Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13, 36 L.Ed.2d at 677–78 n. 13.[1] Generally, a plaintiff must show that: 1) she is a member of a protected class; 2) she was qualified for the position in question; 3) the employer took some action adverse to the plaintiff; and 4) the same action was not taken with respect to persons not within plaintiff's protected class.

■ If the plaintiff is able to establish a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for its action, in this case termination, with respect to the plaintiff. The inquiry, however, does not end here. If the employer is successful in presenting a legitimate non-discriminatory reason for its action, the burden shifts back to the plaintiff to show that the proffered reason is merely pretext for the employer's true discriminatory purpose.[2]

■ Especially relevant to a showing of pretext is evidence that employees not within plaintiff's protected class who were similarly situated to the plaintiff were nevertheless retained by the employer. *Id.* at 804, 93 S.Ct. at 1825, 36 L.Ed.2d at 679.

■ In the instant matter, Penn Air has proposed the following prima facie case for each plaintiff: "1) she is a member of a protected class; 2) she was qualified for the position she held; and 3) she was discharged while other employees not in the protected class were retained, *which requires a showing of disparate treatment for similarly situated male employees.*" Defendants' Reply Brief at p. 6 (emphasis added). This court disagrees with the emphasized portion of Penn Air's framing of the third element. While the case law lends some support to this proposed prima facie case, *see Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir.1989); *Miller v. Yellow Freight Systems, Inc.,* 758 F.Supp. 1074, 1077 (W.D.Pa.1991), the breadth of the third element as framed by Penn Air does not ring true to the burden shifting formula espoused by the Supreme Court in *McDonnell Douglas* and its progeny. In fact, Penn Air's third element incorporates factors more appropriately considered during the pretext stage, after the employer has presented a legitimate non-discriminatory reason for plaintiff's dismissal. As the Supreme Court stated in *McDonnell Douglas,* especially relevant to a showing of pretext is evidence that employees in the non-protected class "involved in acts ... of comparable seriousness" to plaintiff's acts were nevertheless retained. *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 804, 93 S.Ct. at 1825, 36 L.Ed.2d at 679.

---

1. While acknowledging that a prima facie case in a Title VII claim will vary according to the facts of the case, the *McDonnell Douglas* court stated that the complainant in the case before it could establish a prima facie case of racial discrimination by showing: "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677.

2. Throughout this burden shifting process, only the burden of production shifts. The burden of persuasion remains at all times with the plaintiff. *Texas Dept. of Community Affairs v. Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093, 67 L.Ed.2d at 215.

■ Penn Air's formulation of the prima facie case disregards its own burden by requiring the plaintiffs to present evidence of pretext in the initial phase of the burden shifting formula. The *McDonnell Douglas* formula was not intended to present the plaintiff with such a formidable task in establishing a prima facie case. "The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dept. of Community Affairs v. Burdine,* supra, 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 215. "It must be stressed that in order to secure to all persons the effective protection of Title VII, federal courts simply cannot make the prima facie case unduly burdensome." *Equal Employment Opportunity Commission v. Metal Service Co.,* 892 F.2d 341, 351 (3d Cir.1990). As the Third Circuit stated in *Bellissimo v. Westinghouse Electric Corp.,* 764 F.2d 175 (3d Cir.1985), *cert. denied,* 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986).

Proof of discharge will establish a prima facie showing in a Title VII suit. We have held that a plaintiff alleging a discriminatory layoff need show only that he was laid off from a job for which he was qualified while others not in the protected class were retained. *Massarsky v. General Motors Corporation,* 706 F.2d 111, 118 (3d Cir.1983), *cert. denied,* [464] U.S. [937], 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). This prima facie case "is easily made out." *Id.* Bellissimo has met this burden. She established that she was within a protected class, women, and that Westinghouse fired her from her job within the Legal Department even though she was qualified to work as an attorney there. She has also shown that men who worked within the Legal Department were not fired.

*Id.* at 180.

Based on the foregoing, in the instant matter, each plaintiff's prima facie case consists of the following elements; 1) she is a member of a protected class; 2) she was qualified for her position; 3) despite her qualifications, her employment was terminated; and 4) employees not within the protected class were retained. Plaintiffs have each met their prima facie case. They are both women. They were both qualified for the position of CSA. They were both terminated from their positions while male employees were retained.

■ Accordingly, the burden now shifts to Penn Air to proffer a legitimate non-discriminatory reason for each plaintiff's dismissal. Penn Air maintains that Frey was fired for a series of workplace infractions, culminating in two serious security violations, while Cardennis was fired because of attendance problems. These are acceptable grounds for dismissal.

■ The plaintiffs maintain, however, that their dismissals were motivated by discrimination, and that the proffered reasons for each of their terminations are merely pretext. Examining the entire record in a light most favorable to the plaintiffs, there is merit to plaintiffs' claim of pretext and it cannot be said that Penn Air is entitled to judgment in its favor as a matter of law. A review of the facts clearly shows support for the plaintiffs' contention that male employees were not cited for serious workplace infractions, while they were cited for even the most minor infractions. In addition, questionable circumstances surround many of the plaintiffs' infractions. For example, although Penn Air characterizes the incident in which Frey left the safe open and did not secure her combination as serious, numerous employees have indicated that the safe was often left open by employees with no repercussions and that the safe's combination was issued to them by placing it on a slip of paper in their open mail slots. In Cardennis's case, Penn Air's own records do not indicate that Cardennis was scheduled to work on the dates she is accused of being absent from work. Finally, both Frey and Cardennis were replaced by male employees. Although Penn Air contends that Cardennis was not replaced by a male employee, she was fired shortly after she was denied a full-time CSA position which was offered to a male and there is no indication that a part-time CSA was hired to replace Cardennis. Therefore, it is reasonable to infer that the new full-time CSA is performing work which would have been performed by the part-time position formerly held by Cardennis.

Further, summary judgment is seldom granted for defendants in discrimination cases because "motive and intent are crucial elements and the proof is in the hands of the alleged wrongdoers." *Galloway v. United Parcel Service, Inc.*, 596 F.Supp. 1563, 1565 (M.D.Pa.1984) (quoting *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 759 (9th Cir. 1980)).

## B. Sexually Hostile Work Environment

A violation of Title VII occurs if sexual harassment is so pervasive that it has the effect of creating an intimidating, hostile, or offensive work environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49, 59 (1986). The Third Circuit has held that "five constituents must converge to bring a successful claim for a sexually hostile work environment under Title VII: (1) the employees suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir.1990).

"The intent to discriminate on the basis of sex in cases involving ... sexual derogatory language is implicit, and thus should be recognized as a matter of course." *Id.* at 1482 n. 3. In the same case, the Third Circuit also held "that the pervasive use of derogatory and insulting terms relating to women generally and addressed to female employees personally may serve as evidence of a hostile environment." *Id.* at 1485.

With little doubt plaintiffs have produced sufficient evidence of their sexually hostile environment claim to survive Penn Air's motion for summary judgment. The intent to discriminate can be implied from the nature of the sexually derogatory remarks reviewed in the fact section of this memorandum. The deposition testimony of most, if not all, of the employees demonstrates that the sexually derogatory language was pervasive and regular, and even male employees recognized that the language was offensive to women. Finally, Hartley, a management level employee, was well-aware of this derogatory language, as he was the chief offender.[3]

## C. Motion to Strike Jury Demand

Penn Air has moved to strike plaintiffs' jury demand. Since neither Title VII nor the PHRA provides for a trial by jury, *Bereda v. Pickering Creek Indus. Park*, 865 F.2d 49, 52 (3d Cir.1989), Penn Air's motion will be granted.[4]

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The motion of defendants Pennsylvania Airlines and David Hartley (record document no. 52, filed December 2, 1991) for summary judgment is denied as to defendant Pennsylvania Airlines and moot as to defendant David Hartley.

2. The action is voluntarily dismissed, with prejudice, as against defendant David Hartley pursuant to Fed.R.Civ.P. 41(a)(2). His name shall, therefore, be deleted from the caption of the case.

3. This action shall proceed to trial on the remaining counts with Pennsylvania Airlines as the sole defendant. The remaining counts are counts I and V of the complaint alleging sexual discrimination and hostile work environment in violation of Title VII, and counts II and VI alleging sexual discrimination and hostile work environment in violation of the PHRA.

4. The motion of defendants Pennsylvania Airlines and David Hartley (record document

---

3. Penn Air argues that Cardennis's claim under the PHRA is time-barred because her initial complaint filed with the Equal Employment Opportunity Commission ("EEOC") in March of 1990, was not verified, and therefore was insufficient under the PHRA. However, this court's review of the record reveals that Cardennis's complaint with the EEOC, which requests dual filing with the Pennsylvania Human Relations Commission, is in fact verified. See plaintiffs' Exhibit 3.

4. Plaintiffs have not sought retroactive application of the Civil Rights Act of 1991.

no. 53, filed December 2, 1991) to strike plaintiffs' jury demand is granted.

5. The revised scheduling order of May 1, 1992 is reaffirmed.